IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Newport News Division

UNITED STATES OF AMERICA,

        v.                                    Criminal No. 4:19cr47-10 (DJN)

RICHARD DAVID BRYANT,
        Defendant.

### MEMORANDUM OPINION
### (Denying Motion for Compassionate Release)

On August 14, 2019, a grand jury returned a 106-count Second Superseding Indictment

against Defendant Richard David Bryant ("Defendant") and other co-defendants, charging

Defendant with two counts of use of a communication facility in furtherance of drug trafficking,

in violation of 21 U.S.C. §§ 843(b) and 2. Defendant pled guilty to one of the two counts, Count

45, on February 10, 2020. On September 10, 2020, the undersigned sentenced Defendant to 29

months' imprisonment, a one-year term of supervised release and a special assessment of $100.

Defendant has a projected release date of March 1, 2022.

This matter now comes before the Court on Defendant's Motion for Compassionate

Release (ECF Nos. 1315, 1361), which moves pursuant to 18 U.S.C. § 3582(c)(1) for

Defendant's release in light of his medical conditions and the outbreak of Coronavirus Disease

2019 ("COVID-19").[1] For the reasons set forth below, the Court DENIES Defendant's Motion

(ECF Nos. 1315, 1361).

---

[1]     On October 5, 2020, Defendant, proceeding *pro se*, filed his initial Motion for
Compassionate Release (ECF No. 1315). The Court then appointed counsel for Defendant, who
filed a Memorandum in Support of Motion for Compassionate Release (ECF No. 1361) on
Defendant's behalf. Because Defendant's counsel has reviewed Defendant's initial arguments
and incorporated them into Defendant's Memorandum in Support (ECF No. 1361), for the same

# I.    BACKGROUND

## A.    Defendant's Underlying Offense

Defendant's conviction stems from his involvement in a sprawling drug trafficking enterprise that distributed narcotics in the Tidewater region of Virginia during 2018.  (*See generally* Second Superseding Indictment (ECF No. 106).)  In the Fall of 2018, Defendant operated as a drug distributor and drug user in Newport News, Virginia.  (October 7, 2020, Presentence Investigation Report ("PSR") (ECF No. 1318) ¶ 45-1.)  Defendant used co-conspirator Damarcus Mackie as his drug source until September 2018, at which time Mackie handed off his customer phone to Travis Walters.  (PSR ¶ 45-1.)  Defendant obtained heroin and cocaine base from Mackie, and later Walters, for redistribution.  (PSR ¶ 45-1-4.)  In October 2018, authorities intercepted a phone conversation between Defendant and Walters in which Defendant inquired about obtaining a gram of heroin, a portion of which he intended to redistribute.  (PSR ¶ 45-4.)  All told, Defendant stands attributed with 32.74 grams of cocaine base, 44.34 grams of cocaine, 158.6 grams of heroin and 28 grams of marijuana, for a total converted drug weight of 284.410 kilograms.  (PSR ¶ 54.)

## B.    Procedural History

On August 14, 2019, a grand jury returned a 106-count Second Superseding Indictment against Defendant and other co-defendants which, in relevant part, charged Defendant with two counts of use of a communication facility in furtherance of drug trafficking, in violation of 21 U.S.C. §§ 843(b) and 2.  (Second Superseding Indictment at 96-101.)  Defendant made his initial appearance on August 27, 2019.  (ECF No. 246.)  The Honorable Robert J. Krask, United States

---

reasons that the Court denies Defendant's Memorandum in Support, the Court also DENIES Defendant's initial Motion (ECF No. 1315).

Magistrate Judge, directed the appointment of counsel and released Defendant on a $5,000 unsecured bond with pretrial supervision. (ECF Nos. 246, 271.)  On February 10, 2020, Defendant entered a guilty plea to Count 45 of the Second Superseding Indictment and, because Defendant violated the terms of his pretrial supervision, Judge Krask revoked his bond. (ECF No. 743.)  During his sentencing hearing on September 10, 2020, the undersigned sentenced Defendant to 29 months' imprisonment and a one-year term of supervised release. (ECF No. 1287.)

### C.    Defendant's Motion for Compassionate Release

Earlier this year, the first cases of COVID-19 emerged in the United States, including within the federal prison system. *See* Fed. Bureau of Prisons, COVID-19 Coronavirus, www.bop.gov/coronavirus (showing updated figures on the number of inmates and prison staff who have tested positive for COVID-19).  In response, on October 31, 2020, Defendant moved for compassionate release pursuant to § 3582(c)(1)(A).  (Def.'s Mem. in Supp. of Mot. for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release) ("Def.'s Mot.") (ECF No. 1361) at 1.)

In support of his Motion, Defendant argues that he should be released on home confinement, because his medical conditions render him particularly susceptible to COVID-19. (Def.'s Mot. at 1, 18-19.)  Specifically, Defendant avers that he suffers from a history of tumors and previously underwent surgery to have a brain stem tumor removed. (Def.'s Mot. at 18-19.) Defendant further submits that he presently suffers from a growing tumor on the side of his face. (Def.'s Mot. at 19.)  Thus, Defendant contends that his medical history increases the likelihood of COVID-19 complications should he contract the disease. (Def.'s Mot. at 18-19.)  Defendant further argues that he has a particularized risk of contracting COVID-19, in part because he

already contracted the disease while incarcerated at a non-Bureau of Prisons ("BOP") facility, and, more broadly, because "[t]he nation's prison system is particularly ill-equipped to handle the spread of a disease as contagious and deadly as COVID-19." (Def.'s Mot. at 15-18.)

As for whether his release comports with the relevant § 3553(a) factors and policy statements, Defendant argues that he "is an ideal candidate for release," because he "is a non-violent offender; he is infirm and less likely to recidivate," and has a good disciplinary record after serving approximately one-third of his sentence. (Def.'s Mot. at 20.) Further, Defendant maintains that releasing him from prison would promote public safety by "decreasing the prison population." (Def.'s Mot. at 20.) Additionally, Defendant notes that his long-term addiction fostered his involvement in the instant crime, and that he has now "broken the chains of that addiction." (Def.'s Mot. at 21.) Defendant avers that despite his years of addiction, he has otherwise proved a hard worker and a good father and husband. (Def.'s Mot. at 21.)

Finally, Defendant argues that he has a viable release plan. (Def.'s Mot. at 22.) Specifically, Defendant intends to work as a tree climber and provide care for his wife, who suffers from multiple sclerosis and legal blindness. (Def.'s Mot. at 21-22.)

In the alternative, if the Court denies his request for compassionate release, Defendant asks that the Court make a nonbinding recommendation to the BOP that Defendant serve his sentence on home confinement, citing 18 U.S.C. § 3621(b)(4), which provides that the BOP shall designate the facility at which an inmate serves his sentence after considering several factors, including "any statement by the court that imposed the sentence . . . recommending a type of penal or correctional facility as appropriate." (Def.'s Mot. at 22-25.)

4

The Government filed its Response Opposing Defendant's Motion for Compassionate Release on November 16, 2020, (Gov't's Resp. in Opp'n to Def.'s Mot. for Compassionate Release ("Gov't Resp.") (ECF No. 1373)), rendering the matter now ripe for review.

## II.   STANDARD OF REVIEW

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify a criminal defendant's sentence for "extraordinary and compelling reasons" "upon motion of the Director of the Bureau of Prisons" or "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A)(i). By its plain language, § 3582(c)(1)(A) requires defendants to first exhaust administrative remedies or wait thirty days after requesting that the warden of their facility file a motion for a sentence reduction; however, courts have waived this requirement when enforcing it would prove futile. *See, e.g.*, *Washington v. BOP*, 2019 WL 6255786, at *2 (N.D. Ohio July 3, 2019) (explaining in addressing motion for recalculation of good time credit under First Step Act that "[t]he failure to exhaust administrative remedies may be excused if seeking administrative remedies would be futile").

Once the administrative remedies under § 3582(c)(1)(A) have been exhausted or waived, the Court may reduce or modify a sentence when "extraordinary and compelling reasons warrant such a reduction." In determining what constitutes "extraordinary and compelling reasons," courts have considered related policy statements under the United States Sentencing Guidelines, though such statements are not binding. *See, e.g.*, *United States v. Beck*, 425 F. Supp. 3d 573, 582 (M.D.N.C. 2019) (considering what the Sentencing Guidelines defined as "extraordinary and

compelling reasons"). These policy statements provide that a defendant's medical conditions, age, family circumstances or other circumstances, either singly or in combination, can prove sufficiently extraordinary and compelling to justify compassionate release. U.S.S.G. § 1B1.13, application notes 1(A)-(D).

However, to be extraordinary and compelling, a defendant's medical conditions must be either "terminal . . . with an end of life trajectory" or must "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." § 1B1.13, application note 1(A). Similarly, a defendant may be released based on his advanced age when he "is at least 65 years old," "is experiencing a serious deterioration in physical or mental health because of the aging process" and "has served at least 10 years or 75 percent of his or her term of imprisonment." § 1B1.13, application note 1(B). Defendants may also seek compassionate release based on family circumstances, including when the caregiver of a defendant's minor child has died or become incapacitated, or when the defendant's spouse or partner has become incapacitated and the defendant constitutes the only available caregiver. § 1B1.13, application note 1(C). Finally, the Sentencing Guidelines contemplate situations in which "there exists in the defendant's case an extraordinary and compelling reason [for compassionate release] other than, or in combination with, [the defendant's medical conditions, age and family circumstances]." § 1B1.13, application note 1(D).

Relevant here, "[i]n the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Feiling* (*Feiling I*), 453 F. Supp. 3d 832, 841 (E.D. Va.

2020) (citing *United States v. Dungee*, 2020 WL 1666470, at *2 (W.D. Va. Apr. 4, 2020); *United States v. Edwards*, 451 F. Supp. 3d 562, 567-68 (W.D. Va. 2020)). "To establish a particularized risk of contracting COVID-19, an inmate must first demonstrate that cases of COVID-19 have emerged at his facility." *United States v. Feiling* (*Feiling II*), 2020 WL 5047064, at *7 (E.D. Va. Aug. 26, 2020). However, even then, "COVID-19 and an inmate's susceptibility to it do not justify compassionate release when . . . the inmate refuses additional protections afforded to him by the BOP without good cause and continues to voluntarily place himself in an environment in which he faces the highest risk of contracting the disease." *Id.*

Even if extraordinary and compelling reasons exist for a defendant's compassionate release, § 3582(c)(1)(A) requires courts to consider "the factors set forth in section 3553(a) to the extent they are applicable" and "applicable policy statements issued by the [United States] Sentencing Commission" before granting a sentence modification. To that end, § 3553(a) requires courts to consider, among other factors, the nature and circumstances of the underlying offense and the history and characteristics of the defendant, as well as the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence and protect the public from further crimes of the defendant. 18 U.S.C. § 3353(a)(1)-(2). Additionally, the Sentencing Commission has advised courts to consider whether, based on the factors set forth in 18 U.S.C. § 3142(g), a defendant would present a danger to the safety of any other person or the community if released.[2] U.S.S.G.

---

[2]    As modified in the context of a compassionate release motion, before releasing a defendant, courts should consider: (1) the nature and circumstances of the offense of conviction, including whether the offense is a crime of violence, a violation of § 1591, a terrorism offense, or an offense involving a minor victim, controlled substance, firearm, explosive or destructive device; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including his or her character, physical or mental condition, family and community ties, financial resources, history of substance abuse and criminal history, as well as

§ 1B1.13(2). And the Sentencing Commission has emphasized that a defendant's rehabilitation while incarcerated, alone, proves insufficient to warrant a sentence reduction. § 1B1.13, application note 3.

Ultimately, the Court may grant compassionate release only after a defendant establishes an extraordinary and compelling reason for his release and the Court finds that the defendant's release would not undermine the relevant § 3553(a) factors or any relevant policy statements issued by the Sentencing Commission.

## III.    ANALYSIS

### A.    Defendant Has Not Demonstrated that Extraordinary and Compelling Reasons Warrant Granting Compassionate Release.

Defendant must show that his circumstances present "extraordinary and compelling reasons" entitling him to compassionate release. Defendant argues that the heightened risk of contracting COVID-19 in prison coupled with his preexisting health conditions could result in a high risk of developing serious COVID-19 complications. (Def.'s Mot. at 1-2, 18-19.)

In response to Defendant's Motion, the Government argues that Defendant has not established extraordinary and compelling reasons entitling him to compassionate release. (Gov't Resp. at 9.) Specifically, the Government contends that Defendant's medical condition remains stable. (Gov't Resp. at 12-13.) The Government points out that despite Defendant's claim that he suffers from a history of tumors, he has only reported having surgery to remove one tumor from his brain stem several years ago. (Gov't Resp. at 12.) Additionally, the Government reports that medical professionals have diagnosed as benign the mass presently growing on

---

whether at the time of the instant offense, the defendant was on a period of probation, parole or other form of release; and, (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g)(1)-(4).

8

Defendant's face, and that BOP medical staff are appropriately treating that growth. (Gov't Resp. at 12-13; Bureau of Prisons Health Servs. Rec. ("Med. R.") (ECF No. 1380) at 24.).) The Government also emphasizes that Defendant has recovered from COVID-19 and has tested negative for the virus since entering USP Lee in November 2020. (Gov't Resp. at 4-5, 12-13; Med. R. at 32.) Indeed, during Defendant's intake screening, Defendant exhibited no COVID-19-related symptoms and denied having any of the COVID-19 high-risk factors. (Gov't Resp. at 4; Med. R. at 6.)

Additionally, the Government argues that Defendant has not established a particularized susceptibility to COVID-19 at USP Lee — where BOP currently houses him. (Gov't Resp. at 16.) On that front, the Government notes that Defendant relies on news articles and other sources to provide theoretical support for his claim that prisons act as ideal environments for disease transmission. (Gov't Resp. at 16.) However, the Government contends, Defendant does not tailor his argument to his specific circumstances. (Gov't Resp. at 16.) Examining USP Lee specifically, the Government observes that the prison has reported no COVID-related inmate or staff deaths,[3] and has relatively few active cases. (Gov't Resp. at 16.) The Court agrees with the Government.[4]

---

[3]     This statistic held true as of December 16, 2020. As of that date, USP Lee reported that 4 inmates and 10 staff members are positive for the virus, no inmates or staff members have died, and 172 inmates and 57 staff members have recovered. *See* Fed. Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/index.jsp# (showing updated coronavirus statistics for each BOP facility).

[4]     Although Defendant had not exhausted his administrative remedies at the time that he filed the instant motion, the Government acknowledges that Defendant's failure resulted from his incarceration at a non-BOP facility. (Gov't Resp. at 7-9.) Accordingly, because "the [G]overnment believes that [Defendant] could not exercise his administrative remedies in this limited situation," the Government concedes that the Court should resolve Defendant's motion on the merits. (Gov't Resp. at 9.)

The Court finds that Defendant has not established an extraordinary and compelling reason for his release. As mentioned, "[i]n the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *Feiling I*, 453 F. Supp. 3d at 841 (citations omitted). Here, Defendant has not made either showing.

To establish a particularized susceptibility to COVID-19, courts have required defendants to provide evidence that they suffer from a medical condition identified by the Centers for Disease Control and Prevention ("CDC") as a COVID-19 risk factor. *See, e.g.*, *United States v. Beahm*, 2020 WL 4514590, at *2 (E.D. Va. Aug. 5, 2020) (finding the defendant particularly susceptible to COVID-19, because the defendant suffered from type II diabetes, which the CDC has identified as a COVID-19 risk factor); *United States v. White*, 2020 WL 3442171, at *5 (E.D. Va. June 23, 2020) (finding that the defendant had a particularized susceptibility to COVID-19, because he suffered from several medical conditions identified as COVID-19 risk factors). Indeed, a general fear of contracting COVID-19, without a sufficient basis for that fear, does not provide an extraordinary and compelling reason for a defendant's release. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society . . . cannot independently justify compassionate release."); *Feiling I*, 453 F. Supp. 3d at 841 ("Notably, 'the *fear* of contracting a communicable disease' proves insufficient to justify a sentence modification." (quoting *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020) (emphasis added))).

In the instant case, Defendant argues that he has a particularized susceptibility to COVID-19 due to his history of tumors. (Def.'s Mot. at 18-19.) However, the Court's review of

10

Defendant's health records reveals that Defendant's condition proves not so severe as to establish a particularized susceptibility to COVID-19.

For one, despite claiming a history of tumors, Defendant has only cited one surgery for a tumor on his brain stem that he had removed over thirteen years ago. (PSR ¶ 87.) Additionally, the present growth on Defendant's face has proven benign, and BOP medical professionals have developed a treatment plan to address it. (Med. R. at 24.) The Court finds that the medical evidence does not support a finding that Defendant's history of tumors renders him particularly susceptible to COVID-19. Indeed, Defendant does not allege — and the medical records do not reveal — that he presently suffers from a cancer diagnosis. Also noteworthy, Defendant tested positive for COVID-19 before entering USP Lee, but thereafter tested negative and reported having no COVID-related symptoms. (Def.'s Mot. at 2; Med. R. at 6-8, 32.)

Additionally, Defendant has not demonstrated a particularized risk of contracting the virus at the BOP facility at which he currently resides. For instance, as of December 16, 2020, USP Lee reported only four (4) active cases of COVID-19 among inmates, with no inmate or staff deaths reported to date. *See* Fed. Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/index.jsp# (showing updated coronavirus statistics for each BOP facility). Moreover, Defendant does not demonstrate any inadequacies relating to USP Lee's protocols, or how those inadequacies jeopardize his health. Accordingly, Defendant has not shown either a particularized susceptibility or a particularized risk sufficient to constitute an extraordinary and compelling reason for his compassionate release.

### B.     The Court Finds that the § 3553(a) Factors Do Not Support Defendant's Release.

The Court also finds that the § 3553(a) factors do not support Defendant's release. In support of his Motion, Defendant argues that he will not present a danger to the community if

11

released, because he qualifies as a non-violent offender and has maintained clear conduct while incarcerated. (Def.'s Mot. at 20.) Defendant further contends that he has a viable release plan, which includes living with his wife and providing her with needed care. (Def.'s Mot. at 20-22.) Finally, Defendant avers that drug addiction motivated his involvement with the instant criminal offense, and that "by all accounts" he otherwise proves a hard worker and good father and husband. (Def.'s Mot. at 21-22.)

The Government argues that Defendant's release would undermine the relevant § 3553(a) factors and policy statements. (Gov't Resp. at 18-20.) The Government asserts that Defendant remains a danger to the community, noting that Defendant has six (6) prior convictions for driving-related offenses. (Gov't Resp. at 18.) Additionally, the Government notes that Defendant's most recent conviction — which stemmed from his involvement in large-scale drug trafficking — represents a significant escalation in the seriousness of Defendant's misconduct. (Gov't Resp. at 18.) The Government further argues that Defendant's risk of recidivism remains high, as demonstrated by Defendant's history of drug addiction and noncompliance with pretrial supervision. (Gov't Resp. at 18.) Finally, the Government emphasizes that Defendant received an additional one-point reduction pursuant to the undersigned's Coronavirus Variance, and with that variance, Defendant still received a sentence below the recommended advisory guideline range. (Gov't Resp. at 18-19.)

The Court agrees with the Government and finds that the relevant § 3553(a) factors do not support Defendant's compassionate release. For one, Defendant's instant offense shows a serious escalation in his history of misconduct. Specifically, Defendant has shown consistent disregard for the law by accruing six (6) driving-relating convictions, in addition to his conviction for the instant offense. (PSR ¶ 64-69.) Moreover, Defendant presents a recidivism

12

risk, as evidenced by the fact that he violated the conditions of his pretrial release and consistently failed to comply with drug testing requirements. (ECF No. 743; PSR ¶¶ 95, 97-103.) Finally, Defendant already received a sentence below the recommended advisory guideline range, and has over one year remaining on that sentence. Accordingly, the Court finds that Defendant's compassionate release would not promote respect for the law.

Together, both the nature and circumstances of Defendant's underlying offense and his criminal history weigh against his release. Ultimately, even if extraordinary and compelling reasons did exist for Defendant's compassionate release, the Court, in its discretion and after considering the relevant § 3553(a) factors and policy statements, finds that releasing Defendant at this time would not adequately protect the public, promote respect for the law, deter Defendant and others from engaging in similar conduct or reflect the seriousness of Defendant's offense. For the same reasons, the Court declines to issue a nonbinding recommendation to the BOP that Defendant serve the remainder of his sentence on home confinement. Accordingly, the Court DENIES Defendant's Motion for Compassionate Release.

### IV.    CONCLUSION

For the reasons set forth above, the Court DENIES Defendant's Motion for Compassionate Release (ECF Nos. 1315, 1361). An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

_____/s/_____
David J. Novak
United States District Judge

Richmond, Virginia
Dated: December 21, 2020